**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| HPEV, INC., a Nevada corporation,<br><br>　　　　　Plaintiff<br><br>　　　　　v.<br><br>SPIRIT BEAR LIMITED, a Delaware corporation,<br><br>　　　　　Defendant. | Case No. 2:13-cv-01548-JAD-GWF |
| SPIRIT BEAR LIMITED, a Delaware corporation, on behalf of HPEV, INC., a Nevada corporation,<br><br>　　　　　Third-Party Plaintiff,<br><br>　　　　　v.<br><br>TIMOTHY J. HASSETT, QUENTIN D. PONDER, JUDSON W BIBB III, THEODORE H. BANZHAF, and MARK M. HODOWANEC,<br><br>　　　　　Third-Party Defendants,<br><br>and<br><br>HPEV, INC., a Nevada corporation,<br><br>　　　　　Nominal Counterdefendant. | **Order denying Emergency Motion for Preliminary Injunction [Doc. 87] and Motion for Leave to File Supplemental Points and Authorities [Doc. 115]** |

This is a multi-faceted dispute regarding the corporate governance of Plaintiff HPEV, Inc. The primary dispute concerns the adoption of HPEV board resolutions relating to executive compensation and raising capital through the sale of equity. HPEV, Inc. claims that the resolutions were proper and Defendant Spirit Bear Limited has taken actions to prevent their implementation. Spirit Bear responds that the resolutions were improperly adopted and violated agreements between Spirit Bear and HPEV. Spirit Bear additionally contends that HPEV's directors improperly ousted Spirit Bear's appointed directors.

Spirit Bear now moves this Court for a preliminary injunction enjoining HPEV "from violating" a December 2012 Registration Rights Agreement ("RRA") and "requir[ing] HPEV to maintain and ensure the effectiveness of the Registration Statement applicable to Spirit Bear's securities in compliance with the RRA."[1]  Spirit Bear contends that HPEV has violated terms of the RRA under which HPEV was obligated to maintain a valid Registration Statement with the SEC for the securities it sold to Spirit Bear; HPEV has failed to maintain that statement, thus restricting the sale of the securities Spirit Bear holds; and Spirit Bear's inability to sell these securities presents an imminent threat due to HPEV's financial status.

I find this motion appropriate for disposition without oral argument.[2]  Because Spirit Bear has not shown its likelihood of success on the merits of its claims, I deny the motion.  Resolution of this motion renders HPEV's recently filed Motion for Leave to File Supplemental Points and Authorities[3] moot, and that motion is also denied.

## Background[4]

On December 14, 2012, Spirit Bear and HPEV entered into a Securities Purchase Agreement (the "SPA"), whereby Spirit Bear acquired 200 preferred shares of HPEV stock along with various warrant rights.  The SPA also granted Spirit Bear the right to appoint a certain number of individuals to HPEV's board of directors. The same day, the parties also executed the RRA, which provides, inter alia, that HPEV would file a Registration Statement with the SEC regarding the securities sold under the SPA. HPEV initially complied with the obligation, filing a Form S-1 Registration Statement for the securities, which the SEC declared effective on January 23, 2013.

A dispute arose and the parties entered into a settlement agreement that included an increase

---

[1] Doc. 87 at 21.  The Court exercises its discretion under L.R. 7-5(d)(3) to decline to treat this motion as an "emergency" motion because the Court does not find a true emergency exists within the spirit of the rule.

[2] L.R. 78-2.

[3] Doc. 115.

[4] This section is intended only for context and does not constitute any finding of fact.

1   in the conversion rate of Spirit Bear's shares of HPEV preferred stock from 20,000 to 50,000 shares,

2   and a new Form S-1 was required to register the shares.  But no new Registration Statement was

3   filed. Notwithstanding the settlement agreement, disputes continued between the parties and

4   ultimately culminated in HPEV filing this lawsuit on August 27, 2013.

5   **Discussion**

6          Rule 65 of the Federal Rules of Civil Procedure requires a party seeking a preliminary

7   injunction to establish: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm

8   in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an

9   injunction is in the public interest.[5]  The decision to grant a preliminary injunction is committed to

10  the sound discretion of the trial court,[6] and courts may only issue an injunction "upon a clear

11  showing that the [movant] is entitled to such relief."[7]  A preliminary injunction is an extraordinary

12  remedy never awarded as a matter of right.[8]

13  **A.      No Demonstration of a Likelihood of Success on the Merits**

14         In its filings, HPEV does not offer any defense against Spirit Bear's allegations of breach.

15  Rather, HPEV argues that Spirit Bear is not likely to succeed on the merits of its claims because

16  Spirit Bear is not entitled to specific performance of HPEV's obligations under the contract,[9] and an

17  injunction cannot be granted "to prevent the breach of a contract the performance of which would

18  _____

19         [5] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

20         [6] *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir.
21  1980).

         [7] *Winter*, 555 U.S. at 22.
22
         [8] *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008).
23
24         [9] HPEV also contends that there is no likelihood of success on the merits because Spirit Bear's
    original responsive pleading did not include any claim for breach of contract.  However, although
25  preferable to file the counterclaim first, there is no requirement that the counterclaim be filed before
    issuing a preliminary injunction where both the precise relief the counterclaimant seeks and the basis
26  for issuance of a preliminary injunction are clear.  *See, e.g.*, *Ruscitto v. Merrill Lynch, Pierce, Fenner
    & Smith, Inc.*, 777 F. Supp. 1349, 1352 (N.D. Tex. 1991).  Moreover, the Court granted Spirit Bear's
27  motion for leave to amend, and counterclaims for breach of contract have been added to Spirit Bear's
    responsive pleading. *See* Doc. 118.

28

not be specifically enforced."[10]   HPEV asserts that the language of the RRA specifically prescribes an increase in the amount of warrant shares as the remedy for a lapse in the effectiveness of the Registration Statement, thus negating any argument for specific performance.[11]   Spirit Bear responds that the language of the RRA simply describes a penalty for delay, not the exclusive remedy for breach, and it is entitled to seek specific performance in addition to the increased warrant shares.

I do not need to reach the interpretation of the contract at this point, however, because even under Spirit Bear's interpretation of the increased-warrant-shares provision, the contract does not contemplate specific performance.  Under California law,[12] specific performance of a contractual obligation is an appropriate remedy only when the plaintiff can show "(1) the inadequacy of his legal remedy; (2) an underlying contract that is both reasonable and supported by adequate consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract."[13]

---

[10] Cal. Civ. Proc. § 526(b)(5); Cal. Civ. § 3423(e).

[11] The pertinent language of the RRA is:

> If the Company fails to keep such Registration Statement so effective, then, as relief for the damages to the holders by reason of delay in and reduction of ability to sell the underlying shares of Common Stock, the number of Warrant Shares shall be increased, as and to he extent set forth in the Warrants.

The Common Stock Purchase Warrant additionally states:

> If . . . the Company fails to maintain the effectiveness of such Registration Statement in accordance with the Registration Rights Agreement, the number of Series W-1 Warrant Shares shall be increased by 25%.

[12] I apply California law because the agreements contain a choice of law provision electing California Law. (Doc. 87-7 p. 22, § 11(d).) Nevada contract law gives effect to parties' choice of law provision so long as "the parties acted in good faith and not to evade the law of the real situs of the contract." *Ferdie Sievers and Lake Tahoe Land Co., Inc. v. Diversified Mortg. Investors*, 603 P.2d 270, 273 (Nev. 1979).

[13] *Real Estate Analytics, LLC v. Vallas*, 72 Cal. Rptr. 3d 835, 840 (Cal. Ct. App. 2008) (citations removed).

1        Although the parties argue about whether specific performance is available under the RRA,

2    neither party undertakes any analysis under this test.  Spirit Bear's legal remedies appear adequate

3    and specific performance is not warranted.  The damage complained of is that HPEV's breach of the

4    RRA reduced the value of the HPEV stock Spirit Bear held because the shares became unregistered.

5    A reduction in the value of stock is typically compensable by monetary damages. This case is

6    somewhat unique because the low volume at which HPEV stock trades would make the actual

7    reduction in the stock's value difficult to calculate.[14]  Nonetheless, "[t]he mere fact that the precise

8    amount of damages may be difficult to prove does not provide the basis for injunctive relief."[15]

9    Although expert testimony may be required to establish the amount of damages, this hurdle does not

10   make specific performance appropriate.

11       I am unpersuaded by Spirit Bear's argument that the parties agreed to specific performance.

12   Spirit Bear cites the remedy provision of the SPA that "[a]ny person having any rights under any

13   provision of this Agreement shall be entitled to enforce such rights specifically;"[16] and it argues that

14   because the RRA and the SPA were contemporaneously executed, concern the same subject matter,

15   and refer to each other, they should be treated as one contract.[17]  But the remedy provision of the

16   SPA contains two sentences that refer to different defined terms. The sentence Spirit Bear quotes

17   refers to "this Agreement," a term defined as the SPA.[18]  The other sentence refers to "the

18   Transactional Documents," a term defined as the SPA, the RRA, the Warrants, "and each of the

19   other agreements entered into by the parties hereto in connection with the transactions contemplated

20

---

21       [14] Because Spirit Bear's holdings of HPEV stock were much greater than the daily trading
     volume, they would likely not be able to sell all of their holdings at one time and without greatly
22   impacting the stock price. One could not simply subtract the difference between the stock price on the
     date of purchase from the stock price on the date they wished to sell to calculate the damages.
23

24       [15] *Woolley v. Embassy Suites, Inc.*, 278 Cal. Rptr. 719, 728 (Cal. Ct. App. 1991) (citing *Voorhies
     v. Greene*, 189 Cal.Rptr. 132, 137 (1983).

25       [16] Doc. 87-5 p. 34, § 9(o).

26       [17] Cal. Civ. Code § 1642.

27       [18] Doc. 87-5 p. 2.

28                                            Page 5 of 7

by this Agreement."[19]  This sentence more generically states that Spirit Bear holds all the rights under the Transactional Documents, any other contract, and any rights provided under law.  Thus, the remedies provision of the SPA delineates the remedies available under the SPA individually and those available under the Transaction Documents, and thus the specific-performance clause referring to the SPA cannot be applied to the RRA.  Accordingly, I decline to construe the RRA and the SPA as a single agreement.

As neither the RRA nor the law authorize specific performance of the RRA, it is unlikely that Spirit Bear will be able to succeed in obtaining specific performance as a remedy for HPEV's breach, and a preliminary injunction is not available.

**B.    Public Policy Does Not Support the Issuance of the Requested Injunction**.

Two policies surrounding preliminary injunctions weigh against awarding one in this case.  First, maintaining an effective registration statement is dependent on the SEC's approval of the registration statement, and specific performance is unwarranted "where the agreement, by its nature requires the assent of a third person not a party thereto."[20]  Second, because a mandatory injunction upsets the status quo rather than maintaining it, preliminary mandatory injunctions are "subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party."[21] As the law does not clearly favor Spirit Bear and the positions it takes, the mandatory injunction it requests is unavailable.

**Conclusion**

Spirit Bear has not satisfied its burden of making a clear showing of its entitlement to injunctive relief.  Accordingly, it is hereby ORDERED that Counterdefendant Spirit Bear Limited's Emergency Motion for Preliminary Injunction **[Doc. 87] is DENIED;**

---

[19] *Id.* at p. 10, § 3(b).

[20] *Casady v. Modern Metal Spinning & Mfg. Co.*, 10 Cal. Rptr.790, 792 (Cal. Ct. App. 1961).

[21] *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).

1    It is further ORDERED that Plaintiff HPEV, Inc.'s Motion for Leave to File Supplemental

2   Points and Authorities **[Doc. 115] is DENIED** as moot.

3         DATED August 5, 2014.

4

5

6                                        _____
                                         Jennifer A. Dorsey
7                                        United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        Page 7 of 7