1

2

3

4

5

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

6

HPEV, INC., a Nevada corporation,

7           Plaintiff                                    Case No. 2:13-cv-01548-JAD-GWF

8              v.

9    SPIRIT BEAR LIMITED, a Delaware corporation,        **Order Denying Emergency Motion for Partial Summary Judgment [Doc. 30]**

10          Defendant.

11   SPIRIT BEAR LIMITED, a Delaware corporation,
     on behalf of HPEV, INC., a Nevada corporation,

12          Third-Party Plaintiff,

13             v.

14   TIMOTHY J. HASSETT, QUENTIN D. PONDER,
15   JUDSON W. BIBB III, THEODORE H. BANZHAF,
     and MARK M. HODOWANEC,

16          Third-Party Defendants,

17   and

18   HPEV, INC., a Nevada corporation,

19          Nominal Counterdefendant.

20

21          This is a multi-faceted dispute regarding the corporate governance of Plaintiff HPEV, Inc.

22   The primary dispute relates to whether HPEV's board resolutions relating to executive

23   compensation and raising capital through the sale of equity were properly adopted.  HPEV claims

24   that the resolutions were proper and Defendant Spirit Bear Limited has taken actions to prevent their

25   implementation.  Conversely, Spirit Bear contends that the resolutions do not authorize the

26   investment solicitation and executive compensation currently taking place.

27

28

1    One week after filing its Amended Complaint,[1] HPEV filed the instant Emergency Motion

2    for Partial Summary Judgment. HPEV asserts that its board of directors had authority to adopt the

3    resolutions providing for raising capital and executive compensation and that even if there were

4    something improper in the adoption of the resolution, Spirit Bear entered into a settlement

5    agreement that released all such claims.  Spirit Bear responds that the original resolution only

6    provided authority to negotiate and sell securities to one particular investor and that the

7    compensation provisions were later rescinded, but that HPEV's management continued to receive

8    the subsequently unauthorized compensation.  Spirit Bear additionally argues that the settlement

9    agreement only released claims arising from the Securities Purchase Agreement.

10    I find this motion is appropriate for disposition without oral argument under Local Rule 78-2.

11    Because questions of material fact exist with respect to the resolutions, the alleged rescission, and

12    the scope of the Settlement Agreement, I deny HPEV's request for summary judgment.

13                                              **Background**

14    The following facts are undisputed.  On December 14, 2012, Spirit Bear and HPEV entered

15    into a Securities Purchase Agreement (the "SPA") in which Spirit Bear acquired 200 preferred

16    shares of HPEV stock along with various warrant rights.[2]  The SPA contains a provision granting

17    Spirit Bear the right to appoint 50% of the directors composing HPEV's board for three years.[3]  The

18    SPA required HPEV to amend the bylaws to accommodate appointment of the Spirit Bear-

19    designated directors.[4]

20    HPEV adopted a board resolution on February 20, 2013, amending the bylaws and

21

22

23    _____

    [1] Doc. 30.  The Court declines to treat the motion as an Emergency Motion under LR 7-5 because

24    this motion does not present a true emergency.  The parties are cautioned to refrain from unnecessary
    use of the term "emergency" in titling their filings.  Repeated abuses of the "emergency" motion vehicle

25    will be sanctioned.

26    [2] Doc. 31-1.

27    [3] *Id.*

28    [4] *Id.*

Page 2 of 9

1  appointing two Spirit Bear-selected directors.[5]  The third Spirit Bear-selected director was

2  subsequently appointed on March 6, 2013.[6]

3      The February 20, 2013, resolution contained two additional provisions pertinent to this

4  dispute.  First, the resolution adjusted the compensation and compensation benchmarks for HPEV

5  management.[7]  Second, it authorized management to solicit investment in the company up to $3.2

6  million.[8]  As the Spirit Bear-designated directors were appointed in the same document, they did not

7  participate in the passage of these provisions.

8      Spirit Bear disputed the validity of the resolutions and eventually the parties entered into a

9  Settlement Agreement.[9]  Under the Settlement Agreement, the conversion rate of Spirit Bear's

10  preferred stock was increased from 20,000 to 50,000 shares, and Spirit Bear released HPEV from

11  liability arising from its allegations that the February 20, 2013, resolution violated the SPA.[10]

12      Despite the settlement, the dispute continued.  On August 16 , 2013, Spirit Bear sent a cease-

13  and-desist letter to HPEV demanding the company stop issuing securities and paying executives

14  above certain levels.[11]  The same day, Spirit Bear publicly filed an amendment to its Schedule 13D

15  with the SEC, attaching the August 16 letter and repeating its allegations against HPEV.[12]

16      HPEV filed this lawsuit on August 27, 2013, amended its complaint[13] on October 9, 2013,

17  and filed this motion for summary judgment just six days later.  HPEV avers that its ability to run its

18  business has been hampered by the inability to raise capital due to Spirit Bear's actions.  HPEV

19  _____

20      [5] Doc. 31-2.

21      [6] Doc. 30.

22      [7] *Id.*

23      [8] *Id.*

24      [9] Doc. 31-3.

25      [10] *See id.*

26      [11] Doc. 31-4.

27      [12] Doc. 31-5.

28      [13] Doc. 29.

requests partial summary judgment on some of its claims and asks the Court to declare that the board resolutions relating to executive compensation and the sale of equity are valid.  Although at the time of filing the parties had not conducted any discovery, HPEV asserts that summary judgment is appropriate on this portion of its claims.

**Discussion**

**A.    Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.[14]  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[15]  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law.[16]  Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate.[17]  In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party.[18]

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.[19]  Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."[20]  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible

---

[14] *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[15] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[17] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

[18] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[19] *Celotex*, 477 U.S. at 323.

[20] *Anderson*, 477 U.S. at 256.

discovery material, to show that the dispute exists"[21] and "must do more than simply show that there is some metaphysical doubt as to the material facts."[22]  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."[23] Although the parties may submit evidence in an inadmissible form, the court may only consider evidence which might be admissible at trial in ruling on a motion for summary judgment.[24]

**B.      Genuine Issues of Fact Preclude Summary Judgment in HPEV's Favor.**

HPEV asserts that the February 20, 2013, board resolution properly provided the authorization to pay the prescribed executive compensation and raise capital through the sale of equity.  It further contends that any claims Spirit Bear may have had resulting from the implementation of the resolutions were eliminated through its release of liability in the Settlement Agreement.  Spirit Bear responds that the authorization to raise capital only applied to one particular investor and that the compensation provisions in the resolution were later rescinded.  Spirit Bear also argues that the Settlement Agreement only covers its claims arising under the SPA, and its present arguments are outside that agreement.  HPEV's motion presents three main issues to be decided: (1) whether both, or only one, of the nearly identical resolutions passed February 20, 2013, are valid and of effect; (2) whether the compensation provisions in the February 20, 2013, resolutions were rescinded; and (3) if Spirit Bear would have a valid claim based on the answers to the previous questions, whether Spirit Bear waived that claim by its release of liability contained it the Settlement Agreement.

### 1.      *Authorization to Solicit Investment*

The dispute about the sale of equity hinges on the existence and effect of two different versions of a document entitled "Unanimous Written Consent of the Directors of HPEV, Inc., A Nevada Corporation."  The documents are nearly identical and both purport to have been passed on

---

[21] *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

[22] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

[23] *Anderson*, 477 U.S. at 252.

[24] Fed. R. Civ. P. 56(c).

February 20, 2013.  The one difference between the documents is that one's authorization of

investment solicitation states:

> WHEREAS, the Chief Executive Officer and the President have previously made a presentation to *an accredited investor in California*. NOW, THEREFORE, BE IT RESOLVED, that the Board of Directors hereby authorizes the Chief Executive Officer and the President to continue negotiating and finalize the specific terms of the investment of up to $3.2 million through the issuance of equity or debt as long as existing obligations and agreements are not violated; and be it . . ."

while the other provides:

> WHEREAS, the Chief Executive Officer and the President have previously made a presentation to *accredited investors*; NOW, THEREFORE, BE IT RESOLVED, that the Board of Directors hereby authorizes the Chief Executive Officer and the President to continue negotiating and finalize the specific terms of the investment of up to $3.2 million through the issuance of equity or debt as long as existing obligations and agreements are not violated; and be it . . ."[25]

HPEV asserts that both resolutions are valid and in full force and effect because the more general

grant of authority was approved first, but at the behest of a specific investor to explicitly include

authorization to sell him securities in the board resolution, the board passed a second resolution to

include the language "an accredited investor in California."[26]  Spirit Bear paints a very different

picture: it argues that the document with the "an investor in California language" was the first and

only resolution passed on February 20, 2013, and the other version with the more general language

was not created until weeks later when Jay Palmer, a Spirit Bear-designated director, began

complaining that HPEV management's solicitation of investment from parties other than the

California investor was not authorized by the board.[27]  Spirit Bear attaches the declaration of Jay

Palmer in support of its position.[28]  This evidence demonstrates the existence of a question of

material fact with respect to the more general resolution.

Also belying HPEV's claim that the more general language was included in the first

---

[25] Doc. 31-2 (emphasis added).

[26] Docs. 54-1, 55, 56.

[27] Doc. 45-1.

[28] *Id.*

resolution is the fact that both documents are replete with the use of definitive articles.  Both versions of the resolution reference "*the* investment," "*the* agreement with *the* investor" and "*the aforementioned* investor."[29]  This creates the inference that the more specific document was created first and, subsequently, "an accredited investor in California" was replaced with "accredited investors" without making any further changes to the document.  Thus, this evidence tends to disprove HPEV's explanation of the two resolutions.

As further evidence to support is version of events, Spirit Bear offers the minutes of a board meeting in March 2013 in which HPEV's board recognized that it needed to approve any additional investment.[30]  Because the $3.2 million mark of the February 20, 2013, resolution had not been met, had the board provided HPEV management with full, general authorization to seek investment, there would be no need for additional authorization.

Viewed in the light most favorable to non-movant Spirit Bear, this evidence is sufficient to raise a genuine issue of material fact as to the validity of these documents and their effect.  It prevents this court from definitively adopting HPEV's version of these facts and granting summary judgment in its favor on this theory.

### 2. *Executive Compensation*

Questions of material fact also preclude a determination that the executive compensation provisions of the February 20, 2013, resolutions are still in effect.  Although both versions of the resolution contain identical language on executive compensation, Spirit Bear does not claim that the provisions were unauthorized; rather, it alleges that HPEV's board later rescinded the compensation provision but its management continued to receive compensation under the rescinded structure.  In support of its contention, Spirit Bear produces:  (1) an email from Tim Hassett, HPEV's CEO and a board member, stating an intention to revoke the stock options and reverse the salary increases of the February 20, 2013, resolutions; (2) HPEV's April 15, 2013, Form 10K filed with the SEC stating that "the Company rescinded the change in the president's milestone prices of his options and the

---

[29] Doc. 31-2

[30] Doc. 45-6.

cashless exercise thereof, the granting of options to its vice-president and the compensation levels established by the Board on February 20, 2013;" (3) a draft of a "Unanimous Written Consent of the Directors of HPEV, Inc., a Nevada Corporation" (the "UWC") dated May 2, 2013, resolving to reduce the salaries to the levels established in the January 18, 2013, Form S-1/A, together with the sworn declarations of all the Spirit Bear-designated directors that they signed the UWC and returned it to HPEV's counsel; and (4) HPEV's May 21, 2013, Form 10K/A#2, which contains the same statement as the April 15, 2013, Form 10K.

HPEV argues that this evidence is insufficient to create a question of material fact about the rescission of the executive-compensation provisions. It asserts that the email from Mr. Hassett only expresses an intention of one board member to change the compensation; it is not an action of the board. HPEV then attacks both statements in the Form 10Ks by pointing out the specific information following the quoted statement only details changes to stock options granted to some of HPEV's management in the February 20, 2013, resolutions; no specific description of salary adjustment is contained in either of the Form 10Ks. Finally, HPEV argues that the unexecuted version of the UWC is not board action and does not demonstrate the change in compensation structure Spirit Bear avers.

However, viewing these facts collectively and in the light most favorable to Spirit Bear, they raise a genuine question of material fact as to whether the executive compensation provisions of the February 20, 2013, resolution were rescinded. This issue provides yet another barrier to summary judgment because it prevents the court from concluding as a matter of law that HPEV had authority to continue payment to its management under that resolution.

### 3.    *The Settlement Agreement*

Finally, I consider whether Spirit Bear's claims are barred by its Settlement Agreement release language. The pertinent language of the Settlement Agreement is:

> Spirit Bear . . . hereby irrevocably and unconditionally release[s], and forever discharge[s] [HPEV] . . . of and from any and all actions, causes of actions, suits . . . demands, complaints, claims . . . of any kind or nature whatsoever, in law or equity, whether presently known or unknown . . . which Spirit Bear . . . ever had until the date hereof for

1    . . . any matter, . . . against [HPEV] with respect to the Allegations.[31]

2   The Settlement Agreement defines "Allegations" as Spirit Bear's contentions that:

3           (i) [HPEV] did not perform certain of its obligations pursuant to the
            [SPA] . . . and (ii) certain actions taken by [HPEV] with respect to

4           providing compensation to its management violated the [SPA],
            including without limitation, triggering the anti-dilution protection

5           provided to Spirit Bear in the Securities Purchase Agreement.[32]

6   Thus, by its terms, the release only covers Spirit Bear's claims arising under the SPA.  Viewing the

7   facts in the light most favorable to Spirit Bear, the claims[33] that HPEV's management exceeded its

8   authority by soliciting investment and continuing to provide compensation to its executives under

9   the rescinded resolutions do not arise under the SPA; they relate to general corporate governance

10  and HPEV's management's alleged ultra vires acts.  Thus, HPEV has not demonstrated that Spirit

11  Bear's claims are barred by the release in the Settlement Agreement such that HPEV is entitled to

12  summary judgment in its favor.

13                              **Conclusion**

14          Accordingly, **IT IS HEREBY ORDERED** that Plaintiff HPEV Inc.'s Motion for Partial

15  Summary Judgment **[Doc. 30] is DENIED**.

16          Dated: August 5, 2014.

17

18                                              _____
                                                Jennifer A. Dorsey
19                                              United States District Judge

20

21

22

23

24

_____

25      [31] Doc. 31-3.

26      [32] *Id.*

27      [33] There are other allegations relating to the dispute surrounding the February 20, 2013,
28  resolutions, but they are not the subject of this motion.