1

2
**UNITED STATES DISTRICT COURT**

3
**DISTRICT OF NEVADA**

4

5
HPEV, INC., a Nevada corporation,                    Case No. 2:13-cv-01548-JAD-GWF

6
        Plaintiff

7
        v.                                      **Order re: Motion to Dismiss
Counterclaim [#123], Motion for**
8
SPIRIT BEAR LIMITED, a Delaware corporation,    **Partial Summary Judgment [#121,
127], and Crossmotions for Sanctions**
9
        Defendant.                              **and Attorneys Fees [#129, 140]**

10

11
ALL OTHER CLAIMS AND PARTIES

12

13
     This is a dispute over the payment of executive compensation to four officers and directors of

14
HPEV, Inc. and over other rights and obligations in agreements between the corporation and a

15
significant shareholder, Spirit Bear, Limited.

16
     Spirit Bear owns millions of shares of HPEV stock as a result of a series of agreements with

17
HPEV.[1]  HPEV alleges that, despite the settlement, Spirit Bear continues to interfere with HPEV's

18
attempts to pay executive compensation and to raise capital by issuing equity, and HPEV

19
commenced a breach-of-contract and bad-faith action in the District of Nevada, seeking declaratory

20
relief and damages.[2]  Spirit Bear responded with a derivative action against four HPEV executives

21
and named HPEV as a nominal counterdefendant but successfully sought leave to expand those

22
counterclaims.[3]  Regurgitating the arguments it raised in opposing leave to amend, HPEV now

23
moves to dismiss Spirit Bear's counterclaims.[4]  The briefing on the motion to dismiss spawned two

24

25
    [1] Doc. 29, ¶12; Doc. 31-5 at 3.  This information is taken primarily from the parties'
pleadings and is not intended as any finding of fact.

26
    [2] *See generally* Doc. 29.

27
    [3] Doc. 99.

28
    [4] Doc. 123; *see also* Doc. 107.

1   additional countermotions: Spirit Bear's countermotion for sanctions,[5] and HPEV and its executives'

2   countermotion for attorneys fees.[6]

3        Spirit Bear offers its own dispositive motion.  Its securities purchase agreement (SPA)

4   contained conditions precedent that excused Spirit Bear from performing the purchase if HPEV's

5   shareholders failed to agree in writing to nominate three Spirit Bear-designated candidates for

6   HPEV's board of directors, call a special shareholder meeting to ratify the nomination, vote to elect

7   the Spirit Bear nominees, ensure their service on the board for three years after the closing of the

8   securities purchase, and amend the bylaws to require that 50% of the HPEV board of directors be

9   comprised of Spirit Bear designees.[7]  The purchase closed without satisfaction of those conditions,

10  Spirit Bear later notified HPEV that it considered the failure of these conditions to be a breach of the

11  SPA, and the parties settled all of Spirit Bear's claims regarding HPEV's alleged breach.[8]  Spirit

12  Bear's first two counterclaims allege that HPEV violated the SPA "to essentially preclude Spirit

13  Bear from its contractually entitled seats on the HPEV Board,"[9] and its sixth counterclaim seeks,

14  *inter alia*, a judicial declaration that the Spirit Bear nominees "are still directors on the HPEV Board,

15  and have been since their purported non-election at HPEV's annual meeting."[10]  Spirit bear asks the

16  court to now grant that declaration by summary adjudication.[11]  HPEV and its executives oppose the

17  request and alternatively ask me to delay ordering summary judgment to permit them additional time

18  for discovery into who is pulling the strings behind Spirit Bear's designees.[12]

19        Having read and considered all of the parties' extensive briefing and the record in this case, I

20  _____

21      [5] Doc. 129.

22      [6] Doc. 140.

23      [7] Doc. 107-2 at 24-25, ¶ 6 (xiii)-(xiv).

24      [8] Doc. 107-3.

25      [9] Doc. 119, ¶¶ 105, 113.

26      [10] *Id.* at ¶ 141.

27      [11] Doc. 121.

28      [12] Doc. 127.

1  find these matters appropriate for disposition without oral argument,[13] deny HPEV's motion to

2  dismiss the cross motions for sanctions, and HPEV's Rule 56(d) request, grant Sprit Bear's motion

3  for partial summary judgment in part and declare that Jay Palmer, Carrie Dwyer, and Donica Holt

4  remained holdover directors on the HPEV board despite the January 2014 director election for the

5  reasons below.

6                                   **Discussion**

7  **A.    HPEV's Motion to Dismiss Spirit Bear's Amended Counterclaim [#123]**

8          On June 26, 2014, over HPEV's opposition,[14] I granted Spirit Bear's motion to expand its

9  counterclaims against HPEV.[15]  The claims fall into two factual categories: (1) allegations that

10  HPEV violated the December 14, 2012, securities purchase agreement (SPA) by failing to satisfy

11  certain conditions precedent; and (2) HPEV breached its obligations under a concurrently inked

12  registration rights agreement (RRA) by, *inter alia*, failing to file a registration statement and

13  precluding Spirit Bear's sale of its HPEV shares.[16]  In opposing amendment, HPEV argued that

14  amendment would be futile based on a handful of substantive arguments relating to the interpretation

15  of the contracts that form the basis for Spirit Bear's counterclaims.[17]  For example, HPEV argued

16  that the contractual entitlements on which Spirit Bear bases its SPA-related claims are really

17  conditions precedent that cannot form the basis of a breach claim and, in any event, the SPA-related

18  claims were released by settlement agreement.  HPEV further argued that the RRA-based claims fail

19  because Spirit Bear already received the only remedy the RRA prescribes.[18]  I nevertheless granted

20  leave because I concluded that Spirit Bear's extremely detailed allegations as pled—even if they

21  ultimately prove unfounded—state cognizable claims for relief, and I suggested that HPEV's

22  

23          [13] *See* Nev. L.R. 78-2.

24          [14] Doc. 107.

25          [15] Doc. 118.

26          [16] Doc. 119.

27          [17] Doc. 107.

28          [18] *Id.*

1   arguments are better suited for summary judgment.[19]

2        Three weeks later, HPEV repackaged its futility arguments into the motion to dismiss Spirit

3   Bear's counterclaims.[20]  Again it argues that Spirit Bear has stated no plausible claim under either the

4   SPA or the RRA based on the very same reasoning it provided in the opposition to the motion to

5   amend.  I treat this motion as one for reconsideration of my leave order and deny it.

6        Although the federal rules do not provide for motions for "reconsideration" such requests are

7   commonly entertained under Federal Rule of Civil Procedure 59(e) and 60(b).[21]  Under Rule 60(b), a

8   district court may provide relief from a final order for, *inter alia*, (1) "mistake, inadvertence,

9   surprise, or excusable neglect," (2) when newly discovered evidence is presented, (3) fraud . . .,

10   misrepresentation, or misconduct by an opposing party," or (6) "any other reason that justifies

11   relief."[22]  Courts use Rule 60(b)(6) sparingly; to receive relief under the residual provision in

12   60(b)(6), a party must demonstrate "extraordinary circumstances."[23]

13        HPEV does not argue that reconsideration is warranted; indeed, it ignores the retread nature

14   of its arguments entirely.  And I do not find that my determination that Spirit Bear's counterclaims

15   state plausible claims for relief that survive Rule 12(b)(6) scrutiny warrants reconsideration.  Rule

16   12(b)(6) requires me to take all of Spirit Bear's well-pled allegations as true.[24]  Although my

17   independent analysis of the contractual agreements and the actions performed by the parties may

18   ultimately disagree with the characterization of those agreements and actions offered by Spirit Bear's

19   allegations or HPEV may ultimately convince me of the merits of a defense, as pled (and taken as

---

[19] *Id*. at 6 n.14.

[20] Doc. 123.

[21] Rule 59(e) governs judgments, and Rule 60 applies generally to all orders; as I am construing this motion as one for reconsideration of leave to amend I apply Rule 60's standard.

[22] Fed. R. Civ. Proc. 60(b)(1)-(3), (6).  The provisions in Rule 60(b)(4)-(5) pertain specifically to judgments, which are not at issue here.

[23] *Greenwalt v. Stewart*, 105 F.3d 1268, 1273 (9th Cir. 1997).

[24] *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

1  true), those allegations state cognizable claims for relief, and Spirit Bear should have been permitted

2  to amend its counterclaim to state those claims.  Accordingly, I do not find that this is a situation

3  warranting the extraordinary relief of reconsideration, I deny HPEV's motion to dismiss Spirit Bear's

4  counterclaims [#123], and I reiterate that HPEV's arguments are better suited for summary

5  judgment.

6  **B.      Motions for sanctions and attorneys fees [##129, 140]**

7        Although I certainly recognize the retread nature of HPEV's dismissal arguments, I do not

8  find that HPEV's characterization of this motion as one for dismissal instead of reconsideration is

9  worthy of sanctions.  Spirit Bear requests $7,750 in attorneys fees and another $5,000 in punitive

10  sanctions "to deter similar future conduct."[25]  HPEV characterizes Spirit Bear's sanction request as a

11  "preposterous" and "baseless" "money grab"[26] made without any attempt to satisfy Rule 11's safe-

12  harbor prerequisite, and HPEV countermoves for $3,195 in its own attorneys fees.

13        "Rule 11 is intended to deter baseless filings in district court and imposes a duty of

14  'reasonable inquiry' so that anything filed with the court is 'well grounded in fact, legally tenable,

15  and not interposed for any improper purpose.'"[27]  "A motion for sanctions may not be filed, however,

16  unless there is strict compliance with Rule 11's safe harbor provision,"[28] which requires a party

17  seeking sanctions to first serve its motion for sanctions on the offending party at least 21 days before

18  filing the motion with the court.[29]

19        Spirit Bear did not invoke Rule 11's safe-harbor provision before filing this motion, and it

20  points out on reply that its motion (though it relies on at least one Rule 11 case) noted the court's

21

22

23  ───────────────

        [25] Doc. 128 at 14.

24
        [26] Doc. 140 at 3.

25
        [27] *Islamic Shura Council of S. California v. F.B.I.*, 757 F.3d 870, 872-73 (9th Cir. 2014)

26  (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

27        [28] *Id.*

28        [29] Fed. R. Civ. Proc. 11(c)(2).

1   "inherent power to impose sanctions for bad faith conduct."[30]   The district court does have an

2   inherent power to sanction attorneys or parties when counsel's conduct "constitute[s] or [is]

3   tantamount to bad faith."[31]   A bad-faith finding requires "more than ignorance or negligence."[32]

4          I do not find HPEV's characterization of its reconsideration motion as a new motion to

5   dismiss to rise to the level of bad faith worthy of an exercise of the court's inherent sanction power.

6   Nor do I find Spirit Bear's sanction request so baseless that HPEV should be awarded the attorney

7   fees it incurred in responding to that motion.   And the parties are cautioned that they should not

8   make a habit of sanction requests.   These types of requests for sanctions—primarily based on a

9   perceived breach of litigation protocol—will not be entertained.   The parties and counsel are

10   reminded that this is an adversarial process; crying wolf with a sanctions request for every briefing

11   cycle will not be tolerated, and the court highly discourages it as a litigation tactic.   All counsel are

12   further cautioned that the tenor of their briefs has become increasingly *ad hominem*, and the court

13   urges an immediate retreat from that approach.

14          Spirit Bear's countermotion for sanctions [#129] and HPEV's request for attorneys' fees

15   [#140] are denied.

16
17   **C.   Spirit Bear's motion for partial summary judgment on the board-composition issue [#121] and HPEV's countermotion under Rule 56(d).**

18          As Spirit Bear's counterclaims survive HPEV's motion to dismiss, I now consider Spirit

19   Bear's request for partial summary judgment on a portion of its sixth counterclaim by which Spirit

20   Bear seeks a declaratory judgment that HPEV's board is and has been comprised of six directors

21   since March 6, 2013, and that composition includes three Spirit-Bear designated members.[33]   Spirit

22   Bear contends that, under the SPA, Spirit bear was "entitled" "to designate half of the HPEV Board

23   for a three year period" and that the parties "agreed" under the SPA "that Spirit Bear's right to

24
25          [30] Doc. 128 at 12.

26          [31] *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001).

27          [32] *Id*.

28          [33] Doc. 121.

1  designate half of the Board would be ensured by, *inter alia*, amending HPEV's bylaws to state that

2  the HPEV Board shall at all times be comprised of an even number of directors of which 50% are

3  individuals designated by Spirit Bear."[34]  Although Spirit Bear's three designees, Jay Palmer, Carrie

4  Dwyer, and Donica Holt, were elected to the HPEV board in early 2013, they were not re-elected

5  when the full slate of directors was put before the shareholders at the annual meeting in January

6  2014.[35]  Spirit Bear contends that the failure to reelect these three directors is a violation of the SPA

7  and the bylaws of HPEV, and—even if the election were properly conducted—by operation of NRS

8  78.330(1), Palmer, Dwyer, and Holt nevertheless remain holdover directors until successors are

9  elected and qualified or they resign and are removed.

10        HPEV responds that the SPA entitlements are really conditions precedent—not promises

11  upon which a breach of contract claim can be based after close of the transaction.  Regardless, HPEV

12  argues, any claim that the failure to fulfill the board-composition conditions violated the SPA was

13  released by the parties' settlement agreement.[36]  HPEV notes that the bylaws only gave Spirit Bear

14  the right to nominate half the board members, it does not guarantee their election; and the bylaws

15  broadly allow "any proper matter" to be presented for action at the annual meeting, so there was no

16  limit on the shareholders' power to approve action items that resulted in the failure to retain the

17  Spirit Bear directors.[37]  And, finally, Spirit Bear argues that the shareholders' votes "against" the

18  Spirit Bear directors are effectively votes to remove them or, at the very least, create a genuine issue

19  of material fact regarding the effect of those votes and whether they resulted in the removal of the

20  directors such that they cannot be deemed holdover directors under NRS 78.330(1).[38]

21        **1.      Legal standard for summary judgment**

22        Summary judgment is appropriate when the pleadings and admissible evidence "show there

23  _____

24        [34] Doc. 121 at 5-6.

25        [35] Doc. 124 at 3.

26        [36] *Id.* at 26 & n.7 (incorporating motion-to-dismiss arguments).

27        [37] *Id*.

28        [38] *Id*. at 29.

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[39]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[40]  If reasonable minds could differ on material facts, summary judgment is inappropriate because summary judgment's purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[41]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[42]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[43]

> **2.**     **Genuine issues of material fact remain over whether the board-composition provisions in the SPA were waived.**

To reach the question of board composition, I must first consider the foundational factual premise of Spirit Bear's claim: HPEV agreed in the SPA that Spirit Bear would have the right to designate half the board of directors for three years.[44]  The SPA does contain board-composition provisions, but they are more properly characterized as conditions precedent rather than promises. California[45] defines a condition precedent as "one which is to be performed before some right

---

[39] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[40] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[41] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[42] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[43] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248-49.

[44] Doc. 121 at 6.

[45] The SPA is governed by California law.  *See* Doc. 107-2, § 9(a).

dependent thereon accrues, or some act dependent thereon is performed."[46]  The distinction between contractual promises and conditions is drawn in Corbin on Contracts §30.13, which explains that "a condition is a fact or an event and is not expression of intention or an assurance.  A promise in a contract creates a legal duty in the promisor and a right in the promisee; the fact or event constituting a condition creates no right or duty and is merely a limiting or modifying factor."[47]  The remedy for non-performance of a condition also differs from that for a breach of promise:

> The purpose of constituting some fact as a condition is always the postponement or discharge of an instant duty (or other specified legal relation).  The non-fulfillment of a promise is called a breach of contract, and creates in the other party a secondary right to damages.  It is the failure to perform a legal duty.  The non-occurrence of a condition will prevent the existence of a duty in the other party; but it may not create any remedial rights and duties at all, and it will not unless someone has promised that it shall occur.[48]

Corbin teaches that "[i]t is not difficult to draw the logical distinction between a promise that a specified performance will be rendered, and a provision that makes a specified performance a condition of the legal duty of a party who promises to render another performance."[49]  If the provision  "intended to make the duty of one party conditional and dependent upon some performance by the other (or on some other fact or event)," it is a condition, not a promise.[50]

The board-composition provisions are found under section 6 of the SPA, entitled "Conditions to each purchaser's obligation to purchase," and below the paragraph that reads:

---

[46] Cal. Civ. Code § 1436.  *See also Platt Pac. v. Andelson*, 862 P.2d 158, 6 Cal. 4th 307, 313 (Cal. 1993) ("Under the law of contracts, parties may expressly agree that a right or duty is conditional upon the occurrence or nonoccurrence of an act or event.").

[47] Corbin on Contracts § 30.12 (Lexis 1999); *see also* 77A C.J.S. *Sales* § 244 (a condition precedent "must be performed before a sales contract becomes absolute and obligatory upon the other party.").

[48] Corbin on Contracts § 30.12 (Lexis 1999)*.*

[49] *Id.*

[50] *Id*.  *See also Weiss v. Northwest Broadcasting, Inc.*, 140 F. Supp. 2d 336, 346 (D. Del. 2001) (citing Corbin on Contracts and rejecting argument "that the nonperformance of a condition precedent constitutes a breach of the agreement").

The obligation of each Purchaser hereunder to purchase the Preferred Shares and the Warrants at the Closing is subject to the satisfaction, at or before the Closing Date, of each of the following conditions, provided that these conditions are for such Purchaser's sole benefit and may be waived by such Purchaser at any time in its sole discretion by providing the Company and each Purchaser with prior written notice thereof:[51]

These board-composition conditions appear as follows:

(xiii)  Stockholders of the Company shall have agreed in writing satisfactory to [Spirit Bear] (1) to nominate to serve as independent directors individuals designated in writing by [Spirit Bear] (the "**Spirit Bear Designees**") in such number as shall be equal to the number of current directors; (2) to call a special meeting of the shareholders of the Company for the purpose of ratifying the nomination of the Spirit Bear Designees; (3) as applicable, to vote its respective shares in the affirmative for the election of the Spirit Bear Designees to the Board of Directors; and (4) to take any and all such steps as shall be required to ensure that, during the period of three (3) years beginning on the Closing Date (or until such date as [Spirit Bear] shall cease to be an affiliate of the Company, should such date occur earlier than the third anniversary of the Closing Date) the Company's Board of Directors shall, irrespective of the number of members, at all times be composed of an even number of members of which at least Fifty Percent (50.00%) shall be Spirit Bear Designees.

(xiv)  The Bylaws or charter of the Company shall be amended to the satisfaction of [Spirit Bear] to provide that the Company's Board of Directors shall, irrespective of the number of members, at all times be composed of an even number of members of which at least Fifty Percent (50.00%) shall be individuals designated by Spirit Bear and who shall be deemed Independent Directors during the period of three (3) years beginning on the Closing Date (or until such date as [Spirit Bear] shall cease to be an affiliate of the Company, should such date occur earlier than the third anniversary of the Closing Date).[52]

By stating that Spirit Bear's purchase obligation "is subject to the satisfaction, at or before the Closing Date, of each of [these] conditions," these provisions make it clear that all of these events must occur at or before closing for Spirit Bear's purchase obligation to arise.  Paragraph 4 of

---

[51] Doc. 107-2 at 22.

[52] *Id*. at 24-25.

the SPA obligated HPEV to "use its best efforts to satisfy timely each of" these "conditions."[53] These provisions did not survive the closing: paragraph 9(i) of the SPA specifically enumerates certain provisions that "shall survive the Closing"; section 6 is not one of them.[54]   The SPA's termination provision clarifies that the non-satisfaction of these conditions precedent gave Spirit Bear "the option to terminate" the SPA "without liability" to HPEV.[55]  Read together, these provisions required HPEV to use its best efforts to bring about these shareholder actions and bylaw amendments before the closing date and merely gave Spirit Bear the right to avoid the purchase if these actions were not timely performed.  They are, therefore, conditions precedent to Spirit Bear's obligation to close on the deal, not promises of performance.

There is no dispute that Spirit Bear closed on the purchase without these conditions having been satisfied, and Spirit Bear does not seek to be released from any obligations under the SPA.[56]  A contracting party may waive a condition precedent or any covenant by "express declaration, or [waiver] may be implied from representations that fall short of an express declaration of waiver, as well as from the parties' conduct and acts and circumstances surrounding performance of the contract."[57]  At a minimum, there is a genuine issue of fact whether Spirit Bear's closing on the purchase agreement without these conditions having been satisfied resulted in the waiver of these conditions.  The provisions contemplate pre-closing action by the shareholders of HPEV "to the satisfaction of" Spirit Bear, and Spirit Bear's completion of the purchase without these conditions having been performed by HPEV's shareholders suggests that Spirit Bear may have been content to close the deal without these conditions having been performed and thus waived their performance. Accordingly, I cannot conclude, as a matter of law, that these provisions of the SPA "entitled" Spirit

---

[53] *Id*. at 18, ¶ 4(a).

[54] Doc. 107-2 at 32, ¶ 9(i).

[55] *Id*., ¶ 9(l).  Spirit Bear does not suggest that it wants out of the long-since-consummated contract.

[56] Doc. 123 at ¶ 6; Doc. 119 at 30-31.

[57] 13 Williston on Contracts § 39:27 (4th ed.).

1   Bear to the shareholder action and bylaw amendments they contemplated.

2       **3.    The effect of the April 12, 2013, settlement agreement leaves genuine issues of**
3             **fact regarding the viability of Spirit Bear's board-composition claims.**

4          Even if I could conclude that the SPA's conditions precedent obligated HPEV and its board

5   to act and that the failure to satisfy these conditions subjects them to liability for breach, it appears

6   that Spirit Bear released all such claims in the April 12, 2013, agreement with HPEV.  The

7   counterclaim is not the first appearance of Spirit Bear's allegation that HPEV was required—but

8   failed—to perform these board-composition obligations under the SPA.  HPEV's June 24, 2013,

9   form 10K reports that HPEV received letters from Sprit Bear in February and March 2013 alleging

10  that HPEV was "in default of" the SPA because it "had not acted promptly to make 50% of the board

11  of directors Spirit Bear designees."[58]  HPEV and Spirit Bear then entered into a settlement of those

12  allegations in a April 12, 2013, agreement whereby Spirit Bear "irrevocably and unconditionally

13  release[d] and forever discharge[d]" HPEV and its "employees, stockholders, officer, directors,

14  agents, representatives and direct and indirect affiliates and respective successors and assigns . . . of

15  and from any and all actions, causes of actions, suits, debts, charges, demands, complaints, claims,

16  administrative proceedings, liabilities, obligations, promises, judgments, agreements, controversies,

17  collection efforts, damages and expenses . . . of any kind or nature whatsoever, in law or equity,

18  whether [then] known or unknown (collectively, the "<u>Claims</u>"), which Spirit Bear and/or any of [its

19  officers, directors, members, managers, equity owners, agents, representatives, heirs and direct and

20  indirect affiliates and their respective successors and assigns] ever had until" April 12, 2013, "with

21  respect to" the failure to perform the board-composition provisions in the SPA.[59]  The agreement

22  makes clear that this release "may be asserted by any Party as a full and complete defense to any

23

24          [58] Doc. 121-4 at 93-94.

25          [59] Doc. 107-3.  An HPEV SEC filing reports, "On April 12, 2013, the Company and Spirit
    Bear Limited reached agreement regarding the settlement of allegations that the Company did not
26  perform certain obligations pursuant to the Securities Purchase Agreement dated December 14, 2012
    with Spirit Bear, and with respect to certain actions taken by the Company with respect to providing
27  compensation to its management.  Spirit Bear agreed to discharge the Company from all claims
    Spirit Bear may have had as well as to forgo all actions of any kind related to those claims which
28  existed on or prior to April 12, 2013."  Doc. 121-4 at 95.

1    subsequent Claim by" Spirit Bear.[60]

2         At a minimum, there is a genuine issue of material fact whether Spirit Bear's claims

3    regarding the breach of the SPA conditions precedent were released by the April 12, 2013, settlement

4    agreement.  Evidence supports that Spirit Bear raised these allegations in February and March 2013

5    and then broadly released HPEV, its shareholders, directors, officers, and others from all claims "of

6    any kind or nature whatsoever" regarding those allegations.

7

8         **4.    Spirit Bear has not demonstrated that the bylaws-amendment and director
                    election process was improperly conducted.**

9         Spirit Bear's argument that the process by which the January 2014 vote (in which a majority

10   of the shareholders voted not to retain the Spirit Bear directors) was carried out violated the

11   company's bylaws and is therefore void also fails to carry the day.  Spirit Bear argues that the

12   Company filed with the SEC on November 15, 2013, a notice of the annual meeting, which set the

13   meeting for December 30, 2013, identified an agenda that included election of the six directors, and

14   noted that plurality voting would control the election of the board.[61]  The proxy statement for that

15   vote represented that the board recommended a vote "for" each of the nominees.[62]  But on December

16   5, 2013, the non-Spirit Bear directors Timothy Hassett, Judson Bibb, and Quentin Ponder took it

17   upon themselves to file amended notices—never approved by the Spirit Bear directors—that added a

18   proposed amendment to HPEV's bylaws that changed the voting process from plurality voting to

19   majority voting, which—if approved—would govern this election cycle.  And the new proxy

20   statement noted that any proxy returned without the shareholder having indicated its vote would

21   result in the proxy being voted in favor of Hassett, Bibb, and Ponder and not in favor of the Spirit

22   Bear directors.[63]  When the votes were tallied by the company's independent transfer agent, the

23   bylaws amendment to the voting procedure passed by 78%, approximately 78% of the outstanding

24   

25        [60] Doc. 107-3, ¶ 4.

26        [61] Doc. 121 at 9.

27        [62] *Id*.

28        [63] *Id*. at 10-11.

1    shares were voted against the Spirit Bear directors, and between approximately 72-77% of the votes

2    were cast in favor of Hassett, Bibb, and Ponder.[64]

3        Spirit Bear contends that Hassett, Bibb, and Ponder did not have the authority to change the

4    notice and proxy statement to include the majority-vote amendment because "HPEV's bylaws

5    explicitly require that the board approve the inclusion of that [action] in the annual meeting notice."[65]

6    Spirit Bear offers a footnoted citation to Article II, Section 4 of HPEV's Bylaws as support for this

7    proposition, but the text of that provision belies Spirit Bear's argument because it says nothing about

8    board approval of annual meeting notices:

9            Written notice of each annual meeting signed by an officer shall be
             given not less than ten (10) nor more than sixty (60) days before the
10           date of the meeting to each shareholder entitled to vote thereat. Such
             notice shall state the place, the date, and hour of the meeting and (i) in
11           the case of a special meeting the general nature of the business to be
             transacted, or (ii) in the case of the annual meeting, those matters
12           which the Board, at the time of the mailing of the notice, intends to
             present for action by the shareholders, but, any proper matter may be
13           presented at the meeting for such action. The notice of any meeting at
             which directors are to be elected shall include the names of the
14           nominees intended, at the time of the notice, to be presented by
             management for election.[66]

15

16   Indeed, this provision suggests that just one officer must approve the notice.  Thus, the legal premise

17   for Spirit Bear's argument—that the company's changes to the notice without approval by the non-

18   Spirit Bear members of the board violated the bylaws—is unsupported by the record.  Based on the

19   evidence Spirit Bear itself has provided, I cannot conclude as a matter of law that the bylaws were

20

21   _____

22   [64] Doc. 124 at 3.  Spirit Bear disputes the court's ability to rely on these tallies by asserting
     that their proponent, corporate counsel David Lubin, lacks the personal knowledge necessary to
23   authenticate these numbers.  HPEV's Chairman and CEO, Timothy Hassett, has since offered an
     additional affidavit in which he states that he has personal knowledge of the results of the votes and
24   confirms them.  *See* Doc. 151-2.  Whereas Lubin does not state that he has personal knowledge of
     the tally and merely reports that it was disclosed in HPEV's 8-K, Hassett does attest to such personal
25   knowledge.  *Compare* Doc. 126 at 4. *with* Doc. 151-2 at 3, 5.  I find that this evidence has sufficient
     markers of reliability and accept these numbers as admissible evidence of the results of the agenda
26   items voted on at the January 2014 annual meeting; although Spirit Bear does not adopt them as fact,
     it also does not offer any evidence to suggest these tallies are incorrect.

27   [65] Doc. 130 at 5.

28   [66] Doc. 130 at 5, n.6; Doc. 121-2 at 2, Art. II, § 4.

1  improperly amended to change the voting process from plurality to majority vote, nor can I conclude

2  that the election of board members at the January 2014 annual meeting was legally invalid.

3           **5.        The Spirit Bear directors are holdover directors.**

4           Although the evidence and controlling contractual provisions presently prevent me from

5  concluding as a matter of law that HPEV did—or failed to do—something to ensure the Sprit Bear

6  directors' place on the HPEV board, I still must decide the question raised by Spirit Bear's final,

7  alternative argument: even if the Spirit Bear directors were not re-elected at the annual meeting, did

8  they retain their positions in a holdover capacity?  Spirit Bear argues that HPEV's bylaws and NRS

9  78.330(1) answer the question clearly: Jay Palmer, Carrie Dwyer, and Donica Holt remain on the

10 board unless and until they are replaced by a successor or they resign and are removed.  HPEV

11 responds that "a fact finder could conclude that the vote AGAINST" these Spirit Bear directors

12 "constitute[s] the actual or constructive removal of each of them as directors,"[67] so summary

13 judgment is not available.

14
             ***a.        The proxy statements belie HPEV's claim that votes "against" the Spirit***
15                          ***Bear directors were votes for their removal.***

16          Article III, Section 6 of HPEV's bylaws permits directors to be removed by a two-thirds vote:

17                    REMOVAL OF DIRECTORS. Except as otherwise provided in
                      Chapter 78.335 of the Nevada Revised Statutes, any director or one or
18                    more of the incumbent directors may be removed from office by the
                      vote of stockholders representing not less than two-thirds of the voting
19                    power of the issued and outstanding stock entitled to voting power.[68]

20 But nothing in the notices or proxy materials for the January 2014 election even suggested that a vote

21 "against" any director up for election would be a vote for his or her removal under this provision.

22 Indeed, just the opposite is true.  The amended proxy statements sent to shareholders announce that

23 they will be voting "to elect the directors of the Company to serve until the Annual Meeting of

24 Stockholders in 2014."[69]  Shareholders were advised that under the plurality system, "failure to vote

25  _____

26          [67] Doc. 124 at 29.

27          [68] Doc. 121-2 at 5.

28          [69] *See, e.g.*, Doc. 124-9 at 4-9.

for an individual will result in another individual receiving a larger proportion of the votes cast."[70] But if the majority-vote amendment were to first pass, "only those nominees who receive the vote of a majority of the outstanding shares will be elected to the Board.  Any director who fails to receive a majority of the votes of the outstanding shares will be requested to resign from the Board.  However . . . . there is currently no authority requiring a director to resign in such a situation.  Therefore, this could result in having a special meeting subsequent to the Annual Meeting for the sole purpose of ensuring that any directors not voted by the shareholders are removed from the Board. . . ."[71]  Thus, even HPEV contemplated that removal would not happen without at least one additional step not taken by this election.  HPEV's argument that votes "against" the Spirit Bear directors were effectively votes for their removal is thoroughly unsupported by the record.

### b. Palmer, Dwyer, and Holt remain holdover directors under the bylaws and NRS 78.330(1).

Because Palmer, Dwyer, and Holt were not removed, they remain holdover directors by express operation of HPEV's bylaws and NRS 78.330(1).  Article III, Section 5 of HPEV's bylaws provides:

> Any vacancy occurring on the board of directors and any directorship to be filled by reason of an increase in the board of directors may be filled by the affirmative vote of a majority of the remaining directors, although less than a quorum, or by a sole remaining director. **Such newly elected director shall hold such office until his successor is elected and qualified or until his earlier resignation and removal.**[72]

Palmer, Dwyer, and Holt were appointed by the board after the number of directorships was increased.[73]  Thus, under this Nevada corporation's bylaws, these "newly elected director[s]" "hold such office until" their successors are "elected and qualified or until [their] earlier resignation and

---

[70] *Id*. at 9.

[71] *Id*.

[72] Doc. 121-2 at 5, Art. III, § 5 (emphasis added).

[73] *See, e.g.*, Doc. 152-2 at 4.

1   removal."[74]   There is no dispute that Palmer, Dwyer, and Holt's successors have not been elected or

2   qualified, nor have these directors resigned and been thereafter removed.  Accordingly, under Article

3   III, Section 5, they continue to "hold such office."

4        NRS 78.330(1) buttresses this conclusion.  The last sentence of NRS 78.330(1) states,

5   "Unless otherwise provided in the articles of incorporation or bylaws, each director holds office after

6   the expiration of his or her term until a successor is elected and qualified, or until the director resigns

7   or is removed." As Palmer, Dwyer, and Holt have not been succeeded by the election and

8   qualification of new directors, they have not resigned, and they have not been removed, "each

9   director [continues to] hold[] office."

10       The Declaratory Judgment Act (DJA) states that, "In a case of actual controversy within its

11   jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may

12   declare the rights and other legal relations of any interested party seeking such declaration, whether

13   or not further relief is or could be sought."[75]   "[F]ederal courts have discretion under the DJA only as

14   to whether to award declaratory relief pursuant to the jurisdiction that they must properly derive from

15   the underlying controversy between the litigants."[76]   Declaratory judgment actions are justiciable

16   when: (1) the judgment will serve a useful purpose in clarifying and settling the legal relations in

17   issue, and (2) when it will terminate and afford relief from uncertainty, insecurity, and controversy

18   giving rise to the proceeding.[77]

19       HPEV has failed to identify any genuine issue of material fact to preclude summary judgment

20   in Spirit Bear's favor on the narrow issue of whether Spirit Bear is entitled to a judicial declaration

21   that Palmer, Dwyer, and Holt are still directors on the HPEV Board and have been since their

22   purported non-election at HPEV's annual meeting, as requested in paragraph 141 of Spirit Bear's

23

24   _____

25   [74] Doc. 121-2 at 5, Art. III, § 5.

26   [75] 28 U.S.C. § 2201(a).

27   [76] *Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849 (9th Cir. 2011).

28   [77] *Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co.*, 873 F.2d 229, 231 (9th Cir. 1989).

sixth counterclaim for relief.[78]  This judgment will serve a useful purpose in clarifying and settling the legal relations of these parties as they proceed in corporate governance.  Accordingly, I grant partial summary judgment on this singular issue and enter a declaration that Jay Palmer, Carrie Dwyer, and Donica Holt remained holdover directors on the HPEV board despite the January 2014 director election.

**6.      HPEV's countermotion to deny or delay summary judgment under FRCP 56(d)**

HPEV also suggests that I should delay or deny summary judgment under FRCP 56(d) to allow HPEV further discovery into whether Palmer, Dwyer, and Holt are mere puppets of securities-industry "pariah" Robert Olins, whom HPEV fears "has wrapped his deceitful tentacles firmly around HPEV, through his undisclosed control of Spirit Bear."  Doc. 124 at 2.  I do not find that Olins's relationship, if any, with Spirit Bear and its nominees has any relevance to the questions raised by this motion, the resolution of which turns on contractual and statutory provisions, not on whether or not the alleged violation—or application—of those provisions is somehow justified by a desire to keep Olins's "deceitful tentacles" off HPEV.  *Id.*  Palmer, Dwyer, and Holt were appointed to the board by the other HPEV directors, and the company's bylaws and Nevada law permit them to retain those seats until they are properly succeeded or removed.  HPEV has not demonstrated that Olins' relationship to Spirit Bear or its board-of-directors designees has any bearing on that conclusion.  Accordingly, HPEV's Rule 56(d) countermotion is denied.

## Conclusion

Accordingly, and for all the foregoing reasons, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

- •    HPEV's Motion to Dismiss Spirit Bear's Counterclaim **[#123] is DENIED**;

- •    Spirit Bear's Countermotion for Sanctions **[#129] is DENIED**;

- •    HPEV and the Third Party Defendants' Counter-request for Attorneys Fees **[#140] is DENIED**;

- •    Spirit Bear's Motion for Partial Summary Judgment **[#121] is GRANTED in part**

---

[78] Doc. 119 at 44, ¶ 141.

and DENIED in part:

- **A partial declaratory judgment is granted in favor of Spirit Bear, declaring that Jay Palmer, Carrie Dwyer, and Donica Holt remained holdover directors on the HPEV board despite the January 2014 director election; the clerk shall enter partial judgment accordingly.**

- The motion is denied in all other respects.

- HPEV's countermotion for relief pursuant to FRCP 56(d) **[#127] is DENIED**.

DATED November 26, 2014.

_____
Jennifer A. Dorsey
United States District Judge