1   GORDON SILVER
    MARK S. DZARNOSKI
2   Nevada Bar No. 3398
    Email: mdzarnoski@gordonsilver.com
3   CHRISTINE A. BRICKER
    Nevada Bar No. 9768
4   Email: cbricker@gordonsilver.com
    DYLAN T. CICILIANO
5   Nevada Bar No. 12348
    Email: dciciliano@gordonsilver.com
6   3960 Howard Hughes Pkwy., 9th Floor
    Las Vegas, Nevada 89169
7   Tel: (702) 796-5555
    Fax: (702) 369-2666
8   Attorneys for Plaintiff/Counterdefendant HPEV, Inc., and Third-Party Defendants Timothy J.
    Hassett, Quentin D. Ponder, Judson W. Bibb, and Theodore H. Banzhaf
9

10              **UNITED STATES DISTRICT COURT**

11                 **DISTRICT OF NEVADA**

12  HPEV, Inc., a Nevada corporation,          CASE NO. 2:13-cv-01548-JAD-GWF

13                          Plaintiff,
                                                **STIPULATION AND**
14  vs.                                         **ORDER REGARDING SETTLEMENT**
                                                **AND DISMISSAL OF DERIVATIVE**
15  SPIRIT BEAR LIMITED, a Delaware             **CLAIMS**
    corporation,
16
                            Defendant.
17

18  SPIRIT BEAR LIMITED, a Delaware
    corporation, on behalf of HPEV, INC., a Nevada
19  corporation,

20                   Third-Party Plaintiff,

21  vs.

22  TIMOTHY J. HASSETT, QUENTIN D.
    PONDER, JUDSON W. BIBB III, THEODORE
23  H. BANZHAF, AND MARK M.
    HODOWANEC,
24
                     Third-Party Defendants.
25
    and
26
    HPEV, INC., a Nevada corporation,
27
                  Nominal Counterdefendant.
28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104439-001/2586666                              1 of 13

1   SPIRIT BEAR LIMITED, a Delaware
    corporation,
2
3    Counterclaimant,

4   vs.

5   HPEV, INC., a Nevada corporation, )

6   Counterdefendant.

7

8        IT IS HEREBY STIPULATED, by and between Plaintiff/Counterdefendant HPEV, Inc.

9   ("HPEV") and Third-Party Defendants Timothy J. Hassett, Quentin D. Ponder, Judson W. Bibb

10  III, and Theodore H. Banzhaf, ("Third-Party Defendants"), as well as Defendant/Third-Party

11  Plaintiff/Counterclaimant Spirit Bear Limited ("SBL"), by and through their counsel of record,

12  that:

13       1)   The Court should grant preliminary approval of the settlement of SBL's

14  shareholder derivative claims against the Third-Party Defendants, as set forth in the Amended

15  Verified Derivative Counter and Third-Party Claim, filed June 27, 2014 (Dkt. 119) (the "SBL

16  Derivative Action").  The Derivative Action Settlement Agreement ("DASA") is attached hereto

17  as **Exhibit A**;

18       2)   The Court should approve the NOTICE OF PROPOSED SETTLEMENT OF

19  DERIVATIVE CLAIMS, attached hereto as **Exhibit B**, and provide shareholders with thirty (30)

20  days to file objections with the Court.

21       In support of the Stipulation and Order sought by the parties, the undersigned advise the

22  Court as follows:

23       **I.   MATTERS PENDING BEFORE THE COURT**

24       1.   This matter was originally commenced with the filing of a Complaint by HPEV,

25  INC. ("HPEV"), a Nevada corporation, against SBL, a Delaware corporation, and Jay Palmer,

26  Carrie Ann Dwyer and Donica Holt.  [See Dkt 1].

27  ///

28  ///

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104439-001/2586666                              2 of 13

1       2.      Following various pre-Answer filings, HPEV ultimately filed, on October 9,

2   2013, a First Amended Complaint ("FAC") wherein it dropped its claims against Jay Palmer,

3   Carrie Ann Dwyer and Donica Holt, and only pursued claims against SBL.  [FAC at Dkt 29].

4       3.      On October 28, 2013, SBL filed its Answer to the FAC and included a Verified

5   Derivative Counter & Third-Party Claim on behalf of HPEV (which was named as a nominal

6   defendant) and against Timothy J. Hassett ("Hassett"), Quentin D. Ponder ("Ponder"), Judson W.

7   Bibb III ("Bibb"), Theodore H. Banzhaf ("Banzhaf") and Mark Hodowanec ("Hodowanec").

8   [Dkt. 38].   Collectively, Hassett, Ponder, Bibb and Banzhaf are hereinafter referred to as

9   "Management Officers & Directors" as well as the "Third-Party Defendants."

10      4.      On June 27, 2014, SBL filed its Amended Answer to First Amended Complaint;

11  Amended Verified Derivative Counter and Third-Party Claim; and Verified Counterclaim.  [Dkt.

12  119].

13      5.      By Order dated November 21, 2014 [Dkt 150], the Court GRANTED

14  Hodowanec's previously filed Motion to Dismiss.  The Verified Derivative Counter & Third-

15  Party Claim was dismissed as to him but was permitted to proceed against the Management

16  Officers & Directors.

17      6.      Thus, currently pending before the Court are direct claims HPEV has asserted

18  against SBL, direct claims SBL has asserted against HPEV, and derivative claims SBL has

19  asserted against the Management Officers & Directors.

20                              **II.      SETTLEMENT**

21      7.      On or about January 28, 2015, the parties entered into a Settlement and Release

22  Agreement ("SRA"), which is intended to entirely dispose of the direct claims asserted by the

23  parties against each other upon the purchase of certain specified securities held by SBL on a date

24  and at an amount specified by the parties in the SRA ("Settlement of Direct Claims").

25      8.      Pursuant to Section 2.5 of the SRA, "(t)he Parties agree to seek to obtain a

26  complete dismissal of all Shareholder Derivative Claims" and have executed the DASA for

27  submission to the Court for approval.

28  ///

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104439-001/2586666

9.     The essential terms of the DASA are as follows:

a.     The SBL Derivative Action will be dismissed, with prejudice;

b.     Christopher McKee, Richard J. "Dick" Schul and Donald Bowman will assume director positions at HPEV to serve as successor directors to Jay Palmer, Carrie Dwyer, and Donica Holt ("SBL Holdover Directors").

c.     Christopher McKee, Richard J. "Dick" Schul and Donald Bowman will form an Independent Directors Committee ("IDC") and shall review the merits of Spirit Bear's derivative claims as set forth in the SBL Derivative Action; [1]

d.     Exercising their sound business judgment, the IDC shall determine the appropriate corporate response of HPEV to the claims raised in the SBL Derivative Action;

e.     The IDC shall have the sole and absolute discretion to take any appropriate responsive action including but not limited to (a) ratification of any and all actions previously undertaken under the authority of the Management Directors; (b) filing a lawsuit against any and all Management Officers & Directors setting forth similar or identical claims as those set forth in the SBL Derivative Action; (c) settling, with or without litigation, any and all claims HPEV may have against any and all Management Officers & Directors on terms and conditions they deem in the best interest of HPEV; and/or (d) taking such other action as they determine is in the best interest of HPEV.

f.     IDC action shall be deemed valid and enforceable if undertaken pursuant to a majority vote of the IDC although the number of IDC members may not be a quorum of all directors of HPEV.[2]

10.     Pursuant to Section 1.1-1 of the SRA, SBL intends to sell one hundred percent of all shares of common and preferred stock it owns in HPEV to HPEV or HPEV's assignee or designee.

11.     Pursuant to Section 1.1-4 of the SRA, if the Purchase Funds are not provided to escrow by HPEV within the specified time frame, the SRA (which includes the DASA) shall terminate.

---

[1] Pursuant to the SRA, SBL Holdover Directors have tendered their resignations from the HPEV Board, which only become effective as of the Initial Payment Date set forth in the SRA (if it occurs). Additionally, all HPEV directors, including the SBL Holdover Directors, have executed a unanimous written consent ("UWC") appointing Christopher McKee, Richard J. "Dick" Schul and Donald Bowman as successor directors for the SBL Holdover Directors immediately upon the effectiveness of the SBL Holdover Directors' resignations (if it occurs). The UWC also appoints Christopher McKee, Richard J. "Dick" Schul and Donald Bowman to the IDC and defines their powers and duties. Although the DASA contemplates the election of the IDC through a special meeting of the shareholders, the current HPEV directors have determined that appointment of the successor directors under Article III, Section 5 of HPEV's bylaws is more efficient, and have executed the UWC setting forth this process. The UWC is attached as **Exhibit C**.

[2] Although the DASA calls for a "with prejudice" dismissal, the DASA and the release contained therein is only intended to bar SBL from re-filing the SBL Derivative Action against the Third-Party Defendants. It is not intended to bar the IDC or other shareholders from pursuing any such claims. Accordingly, to the extent the Court would prefer a "without prejudice" dismissal, the parties will oblige.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104439-001/2586666

4 of 13

12.     Pursuant to Section 1.2 of the SRA, upon completion of the sale of its common and preferred shares in HPEV, SBL's sole ownership interest in securities issued by HPEV will be its ownership of various Warrants.

### III.     STANDARDS

13.     Settlements of shareholder derivative actions are particularly favored because such litigation is "notoriously difficult and unpredictable." *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, 7, 2008 WL 5382544 (N.D. Cal. Dec. 19, 2008) *citing In re AOL Time Warner Shareholder Derivative Litigation,* 2006 U.S. Dist. LEXIS 63260, *8 (S.D.N.Y. September 6, 2006); See also, *Schimmel v. Goldman,* 57 F.R.D. 481, 487 (S.D.N.Y. 1973); *Republic National Life Insurance Company v. Beasley,* 73 F.R.D. 658, 667 (S.D.N.Y. 1977)

14.     In evaluating a settlement, a district court must determine whether the proposed settlement is "fundamentally fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e); *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court should "ensure that the agreement is 'not the product of fraud or overreaching by, or collusion between, the negotiating parties.'" *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, 9, 2008 WL 5382544 (N.D. Cal. Dec. 19, 2008) citing *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Pacific Enterprises Securities Litigation,* 47 F. 3d 373, 377 (9th Cir. 1995); *Maher v. Zapata Corp.*, 714 F.2d 436,  *455, 1983 U.S. App. LEXIS 16994, **57  (5th Cir. 1983) ("Before approving the settlement of a shareholders' derivative action, however, the district court must determine that there has been no fraud or collusion in arriving at the settlement agreement, and that it is fair, reasonable, and adequate.") Parties to the settlement of a shareholders' derivative action are permitted great freedom in shaping the form of the settlement consideration. *Levin v. Mississippi River Corporation*, 59 F.R.D. 353, 367 n. 38 (S.D.N.Y., 1973), aff'd sub nom., *Wesson v. Mississippi River Corporation*, 486 F.2d 1398 (2d Cir., 1973), cert. denied, 414 U.S. 1112, 94 S. Ct. 843, 38 L. Ed. 2d 739 (1973). "The fact that the form of the settlement decided upon is somewhat unusual in that it includes some benefits which cannot be evaluated in financial terms does not militate against its acceptance. . . ." *Levin*, 59 F.R.D. at 367 n. 38. Thus, a settlement may fairly, reasonably, and

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104439-001/2586666                5 of 13

1    adequately serve the best interest of a corporation, on whose behalf the derivative action is brought,

2    even though no direct monetary benefits are paid by the defendants to the corporation. *See Goldman*

3    *v. Northrop Corporation*, 603 F.2d 106, 108-09 (9th Cir, 1979); *Lewis v. Anderson*, 81 F.R.D. 436,

4    438-39 (S.D.N.Y.1978); *Milstein v. Werner*, 57 F.R.D. 515, 521-23 (S.D.N.Y., 1972); See also *Hill*

5    *v. Art Rice Realty Co.*, 66 F.R.D. 449, 453 (N.D.Ala.1974), aff'd, 511 F.2d 1400 (5th Cir.1975) ("it

6    does not follow as a matter of course, that money must be paid to make every settlement a reasonable

7    one").

8         15.    "Notice of a proposed settlement, voluntary dismissal or compromise must be given

9    to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). The notice

10   requirement ensures that "dismissal of the derivative suit is in the best interests of the corporation and

11   the absent stockholders." *Papilsky v. Berndt*, 466 F. 2d 251, 258 (2d Cir. 1972) (citing *Norman v.*

12   *McKee*, 431 F. 2d 769, 774 (9th Cir. 1970), cert. denied, 401 U.S. 912, 91 S. Ct. 879, 27 L. Ed. 2d

13   811 (1971)). "More specifically, notice and court approval of settlements under Rule 23.1 discourage

14   private settlements under which the plaintiff-stockholder and his attorney profit to the exclusion of

15   the corporation and nonparty stockholders." *Papilsky*, 466 F. 2d at 258 (citations omitted). In this

16   way the notice requirement guards against collusive settlement practices. *Id.* Courts also recognize

17   the need for notice to prevent "dismissals which are due primarily if not entirely to the named

18   plaintiff's change in heart about prosecuting the action." *Cramer v. General Telephone & Electronics*

19   *Corp.*, 582 F. 2d 259, 269 (3d Cir. 1978).

20   **IV.    THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE**

21        16.    "In managing the corporation's affairs, the board of directors may generally

22   decide whether to take legal action on the corporation's behalf.  Nonetheless, when the board

23   fails to appropriately act, individual shareholders may file a suit in equity to enforce the

24   corporation's rights. Thus, so-called derivative suits allow shareholders to 'compel the

25   corporation to sue' and to thereby pursue litigation on the corporation's behalf against the

26   corporation's board of directors and officers, in addition to third parties." *Shoen v. Sac Holding*

27   *Corp.*, 122 Nev. 621, 632-633, 137 P.3d 1171, 1179, 2006 Nev. LEXIS 77, 18, 122 Nev. Adv.

28   Rep. 57 (Nev. 2006)

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104439-001/2586666        6 of 13

17.     A demand "informs the directors of the complaining shareholder's concerns and gives them an opportunity to control any acts needed to correct improper conduct or actions, including any necessary litigation." *Shoen v. Sac Holding Corp.*, 122 Nev. 621, 633, 137 P.3d 1171, 1179, 2006 Nev. LEXIS 77, 19, 122 Nev. Adv. Rep. 57 (Nev. 2006)

18.     SBL's claims for relief in the SBL Derivative Action allege two principal wrongdoings by HPEV's Management Officers & Directors: *i.e.* (1) that management took unauthorized and excessive compensation and (2) management issued debt or equity without authority.

19.     SBL further states that it made a demand upon HPEV to rescind the management compensation and the allegedly unauthorized debt or equity issuances and that the Management Officers & Directors of HPEV wrongfully denied this demand. SBL expressly avers that the demand refusal "was arbitrary, unreasonable and not in good faith" [Dkt 38 at para. 53] and that the reason for pursuing the derivative action was that the "demand was wrongfully refused." [Dkt 38 at para. 54].

20.     The allegations of wrongful denial stem, in part, from the fact that the Management Officers & Directors who considered the shareholder demand were the same directors and officers against whom wrongful conduct was alleged. In short, no disinterested directors were on the Board of Directors to investigate the merits of SBL's claims.

21.     "The business judgment rule, however, pertains only to directors whose conduct falls within its protections. Thus, it applies only in the context of valid interested director action, or the valid exercise of business judgment by disinterested directors in light of their fiduciary duties." *Shoen v. Sac Holding Corp.*, 122 Nev. 621, 635-636, 137 P.3d 1171, 1181, 2006 Nev. LEXIS 77, 25, 122 Nev. Adv. Rep. 57 (Nev. 2006)

22.     "(I)n making a business decision, disinterested directors may invoke the business judgment rule's protections. In other words, even a bad decision is generally protected by the business judgment rule's presumption that the directors acted in good faith, with knowledge of the pertinent information, and with an honest belief that the action would serve the corporation's

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104439-001/2586666

7 of 13

1  interests." *Shoen v. Sac Holding Corp.*, 122 Nev. 621, 636, 137 P.3d 1171, 1181, 2006 Nev.
2  LEXIS 77, 27, 122 Nev. Adv. Rep. 57 (Nev. 2006)

3      23.    "(A)pproval of a transaction by the majority of a disinterested and independent
4  board usually 'bolsters' the presumption that the transaction was carried out with the requisite
5  due care." *Shoen v. Sac Holding Corp.*, 122 Nev. 621, 637, 137 P.3d 1171, 1181, 2006 Nev.
6  LEXIS 77, 28, 122 Nev. Adv. Rep. 57 (Nev. 2006)

7      24.    The DASA provides that a committee of independent directors "shall review the
8  merits of SBL's Derivative Claims as set forth in the SBL Derivative Action" and "(e)xercising
9  their sound business judgment, the IDC shall determine the appropriate corporate response of
10  HPEV to the claims for relief raised in the SBL Derivative Action."   [See Section 3 of the
11  DASA]."

12      25.    The parties agreed in the DASA that the IDC would be comprised of
13  "independent" (*i.e.*, disinterested) directors solely because the individuals up for election are not
14  alleged to have been involved in the conduct underlying the SBL Derivative Action.

15      26.    Pursuant to Section 4 of the DASA, both the Management Directors (Hassett,
16  Ponder and Bibb) and the SBL Holdover Directors have unanimously agreed to the
17  establishment of the IDC and the grant of authority set forth above.  They have also unanimously
18  so agreed in the UWC.

19      27.    A committee of independent directors enjoys the presumption that its actions are
20  *prima facie* protected by the business judgment rule. *In re Tyson Foods, Inc. Consol. S'holder*
21  *Litig.*, 919 A.2d 563, 591, 2007 Del. Ch. LEXIS 19, 64, 41 Employee Benefits Cas. (BNA) 1069
22  (Del. Ch. 2007).

23      28.    A committee of independent directors has the power to cause a pending derivative
24  suit to be dismissed in a context wherein a prior demand on the board of directors was excused.
25  *Zapata Corp. v. Maldonado*, Del.Supr., 430 A.2d 779 (1981).  *See also Abbey v. Computer &*
26  *Communications Technology Corp.*, 457 A.2d 368, 372, 1983 Del. Ch. LEXIS 390, 10-11 (Del.
27  Ch. 1983).

28  ///

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104439-001/2586666

8 of 13

29.     Likewise, a committee of independent directors ought to have the power to re-review a shareholder demand to determine an appropriate corporate response.

30.     Section 3 of the DASA reserves to the IDC the full power and authority to institute any corporate action it deems appropriate following its review of SBL's original demand. ("The IDC shall have the sole and absolute discretion to take any appropriate responsive action including but not limited to (a) ratification of any and all actions previously undertaken under the authority of the Management Directors; (b) filing a lawsuit against any and all Management Officers & Directors setting forth similar or identical claims as those set forth in the SBL Derivative Action; (c) settling, with or without litigation, any and all claims HPEV may have against any and all Management Officers & Directors on terms and conditions they deem in the best interest of HPEV; and/or (d) taking such other action as they determine is in the best interest of HPEV.)

31.     Further, SBL, as the derivative plaintiff in the SBL Derivative Action, will likely lose its standing to maintain a derivative suit for and on behalf of HPEV.  Pursuant to the Settlement of Direct Claims, SBL intends to sell all of its equity shares in HPEV to HPEV or its assignee/designee.  Following that sale, the only securities maintained by SBL in HPEV will be warrants (unless SBL chooses to exercise its warrants).

32.     A plaintiff who ceases to be a shareholder during the pendency of a derivative suit loses standing to continue that derivative suit.  *Lewis v. Anderson*, 477 A. 2d. 1040, 1049 (Del., 1984).  A warrant holder fails to satisfy the continuous ownership requirement for maintaining a derivative suit.   *In re New Valley Corp. Derivative Litig.*, 2004 Del. Ch. LEXIS 10, 16-20 (2004).

33.     Thus, upon completion of the Settlement of Direct Claims, the SBL Derivative Action likely cannot proceed absent finding a current shareholder who wishes to be a representative plaintiff for HPEV.

34.     Additionally, since SBL submitted its shareholder demand and filed the SBL Derivative Action, the issue of executive compensation was presented to the shareholders for

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104439-001/2586666

9 of 13

1    consideration. On January 13, 2014, an Annual Meeting of Shareholders of HPEV was held.[3]

2    Proposal 3 thereat was a non-binding resolution seeking approval of the compensation of

3    management that forms the basis of half of the subject matter of the SBL Derivative Action. The

4    shareholder vote regarding approval of the executive compensation was as follows:

5        IN FAVOR -- 36,391,260;

6        AGAINST -- 10,397,840;

7        ABSTAIN -- 192,200.

8        [See Form 8K filed on 1/17/14].

9        35.    The shareholder vote above, while non-binding, is material information relevant

10   to the proper response of the governing body of a corporate entity to a shareholder demand. Said

11   information was not available at the time the Management Officers & Directors considered the

12   SBL shareholder demand. A re-review of the demand by the IDC is appropriate in light of the

13   shareholder vote.[4]

14       36.    The litigation to this point can best be characterized as vigorous and combative.

15   There is no evidence of collusion between SBL and HPEV to prejudice legitimate claims the

16   corporate entity may have against the Management Officers & Directors. No evidence of fraud

17   in connection with the DASA exists. Indeed, the DASA expressly reserves to the IDC the option

18   of pursuing claims against the Management Officers & Directors and establishes a legitimate

19   process to evaluate the merits of such claims.

20       37.    The Notice attached hereto as Exhibit B provides the opportunity for one or more

21   shareholders to object to the DASA and/or UWC and advise the Court of his/her/its willingness

22   and desire to act as a substitute plaintiff for SBL in pursuing the SBL Derivative Action.

23       38.    The Notice will be mailed by HPEV to all shareholders of record.

24

25

26   [3] In the litigation, SBL has disputed the propriety of the annual meeting and the vote referenced in this paragraph 34.
     Up to and until the date that the releases in the SRA and DASA are effective, SBL continues to maintain that the
27   January 13, 2014, Annual Meeting was improper.

     [4] As set forth in footnote 4, up to and until the date that the releases in the SRA and DASA are effective, SBL
28   continues to maintain that the January 13, 2014, Annual Meeting was improper.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104439-001/2586666

39.     Under Ninth Circuit precedent, it is required that this Court "must grant preliminary approval of a settlement, including approval of the notice to shareholders and the proposed method of notice, before having the final settlement hearing." *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, 8, 2008 WL 5382544 (N.D. Cal. Dec. 19, 2008).

40.     "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorney and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, as which arguments and evidence may be presented in support of and in opposition to the settlement." *Manual for Complex Litigation* § 30.41, at 237 (3d ed. 1995); *see also Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981).

41.     It is in the interest of the fair and expeditious administration of justice for this Court to give preliminary approval of the DASA and UWC and approve the Notice attached hereto as Exhibit B.   This will permit the parties to begin the process of notifying the shareholders while they finalize other aspects of the SRA.

///

///

///

///

///

///

///

///

///

///

///

///

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104439-001/2586666

11 of 13

42.     Pursuant to Section 1.1-4 of the SRA, if HPEV does not provide the Purchase Funds to escrow within the specified time period, the SRA (including the DASA) will terminate, and the parties will no longer seek to finalize dismissal of the SBL Derivative Action.

DATED this _20_ day of February, 2015.          DATED this _20_ day of February, 2015.

GORDON SILVER                                    BAILEY KENNEDY

/s/ Mark S. Dzarnoski                            /s/ Joseph A. Liebman
_____                          _____
MARK S. DZARNOSKI                                JOHN R. BAILEY
Nevada Bar No. 3398                              Nevada Bar No. 0137
CHRISTINE A. BRICKER                             JOSEPH A. LIEBMAN
Nevada Bar No. 9768                              Nevada Bar No. 10125
DYLAN T. CICILIANO                               JOSHUA P. GILMORE
Nevada Bar No. 12348                             Nevada Bar No. 11576
3960 Howard Hughes Pkwy., 9th Floor             8984 Spanish Ridge Avenue
Las Vegas, Nevada 89169                          Las Vegas, NV 89148
Tel: (702) 796-5555                              Tel: (702) 562-8820
Attorneys for Plaintiff/Counterdefenant HPEV,   Attorneys for Defendants Spirit Bear Limited
Inc., and Third-Party Defendants Timothy J.
Hassett, Quentin D. Ponder, Judson W. Bibb,
and Theodore H. Banzhaf

## ORDER

The Court, having reviewed the stipulation of the parties and the Exhibits attached thereto, finds as follows:

1.      There is no evidence that the Proposed DASA is the product of fraud or collusion between the parties;

2.      Subject to the receipt and consideration of any objections to be filed by non-party shareholders, the Proposed DASA is fundamentally fair, reasonable, and adequate;

3.      The establishment of the IDC to consider the shareholder demand of SBL regarding executive compensation and issuance of equity adequately advances the best interests of HPEV, as a corporate entity, and preserves the appropriate role of directors in governing corporate entities;

4.      The Proposed DASA does not prejudice HPEV from pursuing any legitimate claims it may have against the Management Officers & Directors in the event the IDC, in the valid exercise of their business judgment, finds cause to proceed;

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104439-001/2586666

12 of 13

5.     The Notice fairly and adequately advises the non-party shareholders of the terms and conditions of the DASA and their right to object to said settlement;

6.     Upon completion of the Settlement of Direct Claims, derivative Plaintiff SBL may no longer have standing as a shareholder to act as a representative plaintiff for HPEV in the SBL Derivative Action.

**THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.     The Court, subject to receipt and consideration of any objections filed by non-party shareholders herein as well as HPEV providing the Purchase Funds to escrow as required by Section 1.1-1 of the SRA, preliminarily approves the DASA;

2.     The Court approves the form of Notice attached as Exhibit B to the Stipulation (except that the clause "and a courtesy copy must be sent to the `Honorable Jennifer A. Dorsey' at the same address" in paragraph F on page 3 (#166-2 at 4) should be deleted, and directs that it be sent to shareholders of record of HPEV within 10 days of this Order and that the deadline for filing objections to the Derivative Suit Settlement Agreement is **April 30, 2015**.

Dated:  February 20, 2015.

_____
UNITED STATES DISTRICT JUDGE

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

104439-001/2586666